[Cite as *State v. Maschke*, 2012-Ohio-4473.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Julie A. Edwards, J. |
| -vs- | : | |
| | : | Case No. 11-CA-12 |
| GEORGE R. MASCHKE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Morrow County Court of
                             Common Pleas, Case No. 2010-CR--142


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      September 24, 2012


APPEARANCES:

For Appellant:                          For Appellee:

JAVIER H. ARMENGAU                      CHARLES HOWLAND
857 South High Street                   MORROW COUNTY PROSECUTOR
Columbus, OH 43206                      JOCELYN STEFANCIN
                                        60 East High Street
                                        Mt. Gilead, OH 43338

*Delaney, J.*

{¶1} Appellant George R. Maschke appeals his conviction in the Morrow County Court of Common Pleas on one count of aggravated vehicular homicide and one count of O.V.I. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose when appellant struck and killed Michelle Golden, a pedestrian, on August 6, 2010 at approximately 8:30 p.m. near the intersection of Denman Road and County Road 37 (Steam Corners Road) in Morrow County. Appellant's blood alcohol content was later determined to be .177.

{¶3} This intersection is near the Mid-Ohio race track, and races for the day had ended. Co. Rd. 37 is a two-lane highway and does not have any markings for pedestrian traffic. The speed limit is 55 miles per hour. It was still daylight and the amount of traffic had lessened.

### Richard Barbour's Account

{¶4} Victim Michelle Golden drove her S.U.V. from the general direction of the race track. Witness Richard Barbour, who had parked on Co. Rd. 37 to make a phone call, watched Golden park her vehicle, grab a camera, and jump out. She crossed Co. Rd. 37 and then stood near the north edge of the road, taking a photograph. Barbour finished his phone call, pulled forward to a stop sign, and looked right and left to check traffic. A car passed by, traveling in the direction of the track, and then suddenly, Barbour saw Golden's camera fly 15 to 20 feet in the air, and Golden was no longer standing in the roadway. Barbour had seen appellant's car pass by but did not see the moment when it struck Golden.

{¶5} A number of witnesses stopped in the immediate aftermath of the collision and attempted to render emergency assistance to Golden, but Golden's injuries were fatal. Upon autopsy, Golden's cause of death was determined to be blunt head trauma due to contact with a motor vehicle. Specifically, Golden suffered a significant skull fracture and fractured ribs. The source of these injuries is consistent with impact from a motor vehicle collision.

*Appellant's Demeanor at the Scene*

{¶6} In the midst of the efforts to save Golden, appellant returned to the scene of the collision. Witnesses observed him park his car, and noticed the right side of his windshield was broken and his right front fender was damaged.

{¶7} Appellant asked witnesses what happened and what he hit. Witnesses described his demeanor after the collision as frightened and shocked; he told at least one witness he didn't see the person he hit. He told others he thought he struck a deer or that someone had thrown something at his windshield.

*Evidence of Appellant's Impairment*

{¶8} A number of law enforcement agencies were present at the crash scene. Sgt. Justin Hurlbert of the Ohio State Highway Patrol noted appellant's flushed face, glassy and bloodshot eyes, and detected the strong odor of an alcoholic beverage coming from appellant's vehicle and also from appellant's person. Appellant was unsteady on his feet.

{¶9} Appellant was put through a series of field sobriety tests at the scene. On the horizontal gaze nystagmus test, investigators detected 6 out of 6 clues of impairment. Appellant failed the one-leg stand test with two out of four signs of

impairment. Finally, on the walk-and-turn test, appellant exhibited 5 out of 8 signs of impairment. Investigators concluded appellant operated his motor vehicle under the influence of alcohol and placed him under arrest.

{¶10} Investigators intended to seek a chemical test to determine the level of appellant's impairment, and noticed he wore a court-ordered ankle bracelet. Appellant told officers he was on probation. Contact was made with a probation officer who stated appellant was required to comply with any requests by law enforcement as a term of his probation.

{¶11} Appellant was taken to Galion Community Hospital, consented to a blood draw, and a sample was obtained. The sample was submitted to the Ohio State Highway Patrol crime lab for testing, which indicated appellant's blood alcohol concentration was .177 grams per one hundred milliliters of blood.

*The Crash Investigation*

{¶12} The crash investigation determined the point of impact was a white scuff mark on Co. Rd. 37, believed to have been made by the sole of Golden's footwear. Officers noted no obstructions to visibility; under similar weather and light conditions, the first possible point of perception for someone traveling in appellant's position to have seen the victim standing at the point of impact was 795.3 feet. The event data recorder was retrieved from appellant's vehicle and indicated no braking at all during the collision; appellant had traveled at a steady rate of 43 or 42 m.p.h.

{¶13} The broken windshield of appellant's vehicle contained hair and tissue. Samples were collected and submitted to the crime lab for analysis. The source of the tissue was determined to be Golden's.

*Appellant's Admissions*

{¶14} Appellant testified on his own behalf at trial. He stated he was on probation for two fifth-degree felony counts of drug possession at the time of the collision and was therefore wearing an ankle bracelet. Between 1:00 and 5:00 p.m. on August 6, he golfed with a friend and consumed approximately 4 beers. He then drove to a friend's house near the Mid-Ohio racetrack where he consumed another 5 beers. He left the friend's house but was returning to retrieve his sunglasses when something struck his windshield on Co. Rd. 37. Appellant testified he never saw Michelle Golden in the roadway or at the side of the roadway.

{¶15} After the collision, appellant drove to his friend's house a short distance away, but then looked at his vehicle and realized he hit something. He also saw hair stuck in his broken windshield and he thought he struck a deer. Appellant returned to the scene of the collision and observed people stopping to assist the victim lying in the ditch.

{¶16} At trial appellant attributed the cause of the collision to sun glare which made it difficult for him to see. He admitted upon cross-examination he never complained of sun glare to witnesses or investigators prior to trial, and he previously told investigators he had consumed a total of only 3 beers before the collision.

*Criminal Charges, Suppression Hearing, and Trial*

{¶17} Appellant was charged by indictment with one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a), a felony of the second degree, one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(f), a misdemeanor of

the first degree.  Appellant entered pleas of not guilty and the case was set for jury trial.

{¶18} Appellant sought to suppress his statements to investigators and the blood test result.  He filed a motion to suppress "any and all statements, answers, physical/mental tests, actions and reactions by [appellant] for the reasons [appellant], during his contact with law enforcement * * *, expressed his desire to consult with counsel not once but twice * * * and [appellant's] requests were by law enforcement ignored * * *."  Appellant further moved to suppress the result of the blood draw on the bases the draw was performed without a warrant, outside the 2-hour time frame prescribed by state law, and not in compliance with rules and regulations of the Ohio Administrative Code.  Appellee responded and noted the motion to suppress was untimely.

{¶19} The trial court held a hearing on appellee's motion to disallow the untimely motion to suppress and ruled appellant would be granted leave to file his motion to suppress.

{¶20} A suppression hearing was therefore scheduled for May 23, 2011.  The trial court later filed a journal entry noting an evidentiary suppression hearing was held lasting two days, and the parties were given an additional opportunity to brief issues which arose during the suppression hearing.

{¶21} Appellant filed a memorandum in support of his motion to suppress on June 6, 2011, arguing the evidence showed he requested counsel two "and possibly three" times.  Appellant further argued evidence at the hearing established his blood was not drawn in compliance with Ohio Administrative Code 3701-53-05: the (second)

successful draw was not accomplished with a swab from the draw kit but with a swab dampened with tap water, and the sample was not properly refrigerated.

{¶22} Appellee filed a memorandum in response asserting appellant was not questioned after invoking his right to counsel, but instead reinitiated himself and admitted consuming 3 beers.  Appellee further argued no warrant was required for the blood draw in light of exigent circumstances, combined with the fact appellant was on probation and required to submit to alcohol testing if requested.  Appellee also argued the blood test and subsequent testing were performed in compliance with Ohio Department of Health regulations.

{¶23} On July 12, 2011, the trial court sustained in part and overruled in part appellant's motion to suppress.  The trial court found appellant had a right to consult with counsel before making any statements, and was so advised.  As a probationer of Richland County, however, appellant was under an obligation to submit to a drug and alcohol test.  Further, appellant did not waive counsel but merely cooperated to the extent necessary.  "Therefore, giving [appellant] the benefit of any doubt on the issue of waiver of prior request for counsel, any incriminating statements made by [appellant] subsequent to his request to consult with counsel are deemed inadmissible, unless [appellant] testifies."  The trial court found no search warrant was necessary to obtain a blood sample from appellant for two reasons: appellant was on probation and required to submit a sample, and appellant consented to the test.  Finally, the trial court found appellee established substantial compliance with Department of Health regulations pertaining to collection of the blood sample and subsequent testing.

{¶24} The case proceeded to trial by jury and appellant was found guilty as charged. He was sentenced on Count One, aggravated vehicular homicide, and Count Two,[1] O.V.I., and received a prison term of 6 years, in addition to a jail term of six months and a 50-year license suspension.

{¶25} Appellant raises two Assignments of Error:

{¶26} "I. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS BLOOD EVIDENCE OBTAINED IN VIOLATION OF THE APPELLANT'S CONSTITUTIONAL RIGHTS SUBSEQUENTLY ALLOWING IT TO BE INTRODUCED INTO EVIDENCE DURING HIS TRIAL."

{¶27} "II. THE APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶28} In his first assignment of error, appellant argues the trial court erred in overruling his motion to suppress and in allowing evidence of the blood test to be admitted at trial. We disagree.

{¶29} Appellant concedes the state has the authority to draw blood from a person suspected of O.V.I. without consent and over objection, provided that probable cause and a warrant or exigent circumstances are shown. See, R.C. 4511.191, *State v. Hoover*, 123 Ohio St.3d 418, 2009-Ohio-4993, 916 N.E.2d 1056, cert. denied, 130 S.Ct. 2380, 176 L.Ed.2d 768. He argues, though, that in this case appellee failed to demonstrate exigent circumstances.

---

[1] Count Three, O.V.I., merged with Count Two.

{¶30} In making his argument, however, appellant cites to the trial transcript; the transcript of the suppression hearing, which was evidently extensive, is not before us. The trial court's findings that led to the ruling resulted from a lengthy suppression hearing, not trial, but that record is not before us. In reviewing assigned error on appeal we are confined to the record that was before the trial court as defined in App.R. 9(A). This rule provides that the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court."

{¶31} App.R. 9(B) also provides in part " * * *[w]hen portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."

{¶32} In *Knapp v. Edwards Laboratories* the Ohio Supreme Court stated: "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶33} Appellant has not provided a transcript of the suppression hearing which began on May 23, 2011. Without a transcript, we must presume the regularity of the trial court's proceeding on the motion. *State v. Ellis*, 5th Dist. No. 11-COA-015, 2011-Ohio-5646, *2. We note the trial court made extensive findings of fact in support of its conclusions of law, and with regard to the blood test, found no search warrant was

necessary in light of appellant's probation status and moreover appellant consented to the blood draw.

{¶34} Having no choice but to presume the regularity of the suppression hearing, and finding the trial court's conclusions of law are supported by its findings of fact, appellant's first assignment of error is overruled.

II.

{¶35} Appellant argues in his second assignment of error his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶36} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilty beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶37} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing

the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶38} Appellant makes no specific argument regarding the manifest weight or sufficiency of the evidence and does not direct us to any shortfall in the evidence in the record. In the interest of justice, we have reviewed the extensive record of the trial of this case and find appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶39} Appellant was convicted of one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a), which states in pertinent part: "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another in any of the following ways: [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code []."

{¶40} Appellant was also convicted of two counts of O.V.I. pursuant to R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(f), which state in pertinent part: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply: (a) the person is under the influence of alcohol * * *; (f) the person has a concentration of seventeen-hundredths of one per cent or more by weight per unit volume of alcohol in the person's whole blood."

{¶41} The evidence at trial established Golden died as a result of traumatic injuries sustained when she was struck by appellant's vehicle.  By his own admission, appellant never saw the victim in or near the roadway and belatedly blamed this lapse on sun glare. The evidence showed appellant drove on Co. Rd. 37 and struck something with enough force to shatter his windshield, yet he did not stop and kept driving until he reached his friend's driveway.   Moreover, appellant admitted consuming 9 beers before driving, had a blood alcohol concentration of .177 grams per one hundred milliliters of blood, and exhibited a number of signs of impairment in the aftermath of the crash, including poor results on the standardized field sobriety tests, glassy eyes, and unsteadiness on his feet.

{¶42} Accordingly, appellant's second assignment of error is overruled.

{¶43} Having overruled both of appellant's assignments of error, we therefore affirm the judgment of the Morrow County Court of Common Pleas.

By: Delaney, P.J.

Wise, J. and

Edwards, J. concur.

HON. PATRICIA A. DELANEY

HON. JOHN W. WISE

HON. JULIE A. EDWARDS

[Cite as *State v. Maschke*, 2012-Ohio-4473.]

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| GEORGE R. MASCHKE | : | |
| | : | |
| | : | Case No. 11-CA-12 |
| Defendant-Appellant | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Morrow County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

_____
HON. JULIE A. EDWARDS