[Cite as *State v. Gies*, 2019-Ohio-4249.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180597 |
| | | TRIAL NO. B-1802799-A |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CHRISTOPHER GIES, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 16, 2019

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   The roots of this case stretch back over a decade, to defendant-appellant Christopher Gies's 2007 misdemeanor conviction that resulted in a community control sentence.  Had he reported, we probably wouldn't be considering this question today, but he instead absconded, resulting in an open arrest warrant.  That set the stage for his 2018 arrest, and when officers finally apprehended him, they discovered a house full of contraband.  Armed with that evidence, the state convicted him of much more serious drug and weapons charges.  Mr. Gies now appeals, seeking to unravel the conviction based on the alleged improper seizure of the evidence (the officers had no search warrant).  For the reasons discussed below, we affirm, finding the search and seizures appropriate under the plain view exception and the good faith exception.

I.

{¶2}   Tipped off by an informant that Mr. Gies might be selling drugs from his residence, officers discovered a long-dormant arrest warrant related to his refusal to report to probation in 2007.  Two probation officers, Officers Schad and Miyagawa, descended upon the residence to execute the arrest warrant, accompanied by Cincinnati Police Officer Butler.  Upon arrival, the officers confirmed with someone standing outside that Mr. Gies was indeed in the house.  They then called out through the screen door for him, announced their presence, and entered the residence into the kitchen.  Drug paraphernalia and weapons scattered around the kitchen greeted them.  Mr. Gies then ascended from the basement and the probation officers promptly arrested him, taking him outside the house to be secured by Officer Butler.  Upon searching Mr. Gies, the officers discovered over $4,500 in cash.

{¶3}   Based on the weapons and drug paraphernalia viewed in plain sight, the officers asked Mr. Gies if anyone else was in the house.  Nodding towards the front of the

2

house, he indicated that his girlfriend, Allison Vilas (who also had a warrant out for her arrest) was in "our bedroom." Leaving Mr. Gies outside, the officers re-entered the house to arrest Ms. Vilas. On their way to the bedroom, the officers observed yet more drug paraphernalia, including drug powder lines and residue, credit cards, and straws strewn across a coffee table. The officers then arrived at the bedroom, finding Ms. Vilas, and once again, viewing additional evidence in plain view—more contraband, weapons, and drug paraphernalia.

{¶4} At this point, after arresting Ms. Vilas, the probation officers and the police searched the entire house (without a warrant). This search uncovered more of the same, multiple firearms and more contraband. In the wake of Mr. Gies's arrest and the search of his residence, the state indicted Mr. Gies for nine counts of various drug and firearm-related offenses. Subsequently, Mr. Gies moved to suppress all items seized from the residence, arguing that the probation officers conducted a warrantless search since, by the fortuity of his failure to report, he never received written notice of the possibility of warrantless searches that a defendant sentenced to community control is supposed to receive pursuant to R.C. 2951.02(A). Nevertheless, the trial court deemed the search permissible, denied the motion to suppress, and the case proceeded to a jury trial.

{¶5} Not surprisingly, the state's case at trial focused on the items found as a result of Mr. Gies's arrest and the search of his residence, including, amongst other evidence, various bags of drugs—cocaine, methamphetamine, amphetamine pills—stacks of empty plastic baggies, a digital scale, a notebook detailing drug prices, the $4,500 found on Mr. Gies, and multiple firearms. Probation Officer Miyagawa testified as to Mr. Gies's and Ms. Vilas's arrests, the search of the home, and the drug paraphernalia, weapons, and contraband observed in plain view. Additionally, Officer Butler described the firearms

3

discovered during the search and the post-seizure test firing he conducted. In Mr. Gies's defense, he maintained that the residence searched was not his, claiming he was only a mere visitor, and thus many of the items listed above could not be connected to him. His mother testified to that effect at trial, asserting that he lived with her in Kentucky at the time of the search.

{¶6} Ultimately, the jury acquitted Mr. Gies of trafficking in cocaine and one count of aggravated trafficking, but found him guilty of possession of cocaine, two counts of aggravated trafficking in drugs (one count including a major drug offender specification), three counts of aggravated possession of drugs, and having weapons while under a disability. Accordingly, the court sentenced him to 22 years in prison. From these convictions, Mr. Gies now raises two assignments of error, asserting that the trial court erred in denying his motion to suppress and challenging the weight and sufficiency of the evidence supporting his convictions.

## II.

{¶7} In challenging the trial court's denial of his motion to suppress, Mr. Gies targets the reasonableness of the probation officers' search of his residence. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We defer to the trial court's factual findings if they are supported by competent and credible evidence, but we review de novo the court's application of the law to those facts. *Id.*

{¶8} We begin with the framework of the Fourth Amendment, which protects individuals against "unreasonable searches and seizures." With nearly identical language, Article 1, Section 14 of the Ohio Constitution affords these same protections. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11 ("[W]e have interpreted

Article I, Section 14 as affording the same protection as the Fourth Amendment."). And like so many courts before us, we recognize that the "touchstone of the Fourth Amendment is reasonableness." *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 14, quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In evaluating the reasonableness of a search and seizure, we review the facts and circumstances of each case, all the while recognizing reasonableness is "measured in objective terms by examining the totality of the circumstances." *Id.*, quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Generally, under the Fourth Amendment, warrantless searches are per se unreasonable, triggering the applicability of the exclusionary rule. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Yet certain well-delineated exceptions exist, a few of which are pertinent to our review today.

{¶9} Notably, Mr. Gies's motion to suppress focuses on the controlled substances and firearms seized as a result of the probation officers' search. While Mr. Gies does not contest the validity of the arrest warrant, he insists that the officers did not have a right under R.C. 2951.02(A) (discussed more in-depth below) to search his home nor did the officers' search fall within any of the exceptions to the warrant requirement. But we are not persuaded.

{¶10} With respect to the plain view exception, officers may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully located in a place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is "immediately apparent." *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *State v.*

*Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 16 ("[I]f a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them."). Generally, we must be mindful in our application of this exception to ensure that it does not swallow the rule. Or, as the Supreme Court put it, " 'the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.' " *Horton* at 136, quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

{¶11} With this backdrop in mind, we now turn to our plain view analysis. As to the first requirement, the probation officers had a right to be in Mr. Gies's residence, properly executing the arrest warrant for him, and later for Ms. Vilas. *See State v. Worley*, 11th Dist. Trumbull No. 2001-T-0048, 2002-Ohio-4516, ¶ 195 ("[I]t is clear from the record that the police officers * * * had a right to be in the residence as they were seeking to arrest appellant pursuant to an arrest warrant for grand theft of a motor vehicle."). Indeed, Mr. Gies does not quibble with this point. From the kitchen, where the officers executed the arrest warrant for Mr. Gies, through the living room, and all the way to the back bedroom where the officers arrested Ms. Vilas, the officers observed a parade of drug paraphernalia, weapons, and contraband. And thus not only were the officers lawfully present with a right to access the many pieces of contraband strewn throughout the house, but the incriminating character of those objects leapt out. Therefore, the evidence in plain view as the officers effectuated both arrests fits comfortably inside the plain view exception.

{¶12} While Mr. Gies is correct that not all relevant contraband and firearms seized fall within the purview of the plain view exception, nevertheless, the good faith exception to the exclusionary rule saves the remaining evidence seized (although the demarcation between these two categories of evidence is not altogether clear from the record). Under

this doctrine, despite the unlawful seizure of evidence, when "an officer acts with an objectively reasonable, good-faith belief that his or her conduct is lawful, the deterrence rationale for the exclusionary rule loses force," and thus does not support the exclusion of the unlawfully seized evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 33. As pertinent to our case, the good faith exception may apply when an officer conducts an unlawful search or seizure laboring under a mistake of law. *State v. Stadelman*, 1st Dist. Hamilton No. C-130138, 2013-Ohio-5035, ¶ 10 (holding that because the officer had a good faith belief that the defendant's turn violated the relevant traffic law, the court properly denied his motion to suppress despite the officer's mistake of law); *State v. Gunzenhauser*, 5th Dist. Ashland No. 09-CA-21, 2010-Ohio-761, ¶ 16 ("Under limited circumstances, courts have held that the exclusionary rule may be avoided with respect to evidence obtained in a stop based on conduct that a police officer reasonably, but mistakenly, believes is a violation of the law."); *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 540, 190 L.Ed.2d 475 (2014) (denial of defendant's motion to suppress was proper because officer's mistaken belief that the law required two operating headlights, instead of one, was objectively reasonable based on the circumstances).

{¶13} "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " *Heien* at 536 quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). However, " '[b]ecause courts must be cautious in overlooking a police officer's mistakes of law, the mistake must be objectively reasonable.' " *State v. Reedy*, 5th Dist. Perry No. 12-CA-1, 2012-Ohio-4899, ¶ 18, quoting *Gunzenhauser* at ¶ 16; *see Heien* at 539 ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable.").

7

(Emphasis sic.) To determine this, Ohio appellate courts, including us, review first the relevant statute the officer mistakenly interpreted to evaluate any vagueness or ambiguity inherent in the statute, or if it "requires judicial construction to determine its scope of meaning." *Stadelman* at ¶ 4, quoting *Reedy* at ¶ 19.

{¶14} Accordingly, we turn our attention to R.C. 2951.02(A), which the probation officers pointed to in order to justify the search, which provides:

> [P]robation officers * * * may search, with or without a warrant * * * the place of residence of the offender * * * in which the offender has a right * * * if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the misdemeanor offender's community control sanction[.] * * * The court that places the misdemeanor offender under a community control sanction * * * shall provide the offender with a written notice that informs the offender that authorized probation officers * * * may conduct those types of searches during the period of community control sanction[.]

Because Mr. Gies never reported to probation back in 2007, the court issued a warrant for his failure to report, thereby sufficiently tolling the probationary period. *See* R.C. 2951.07 ("If the offender under community control absconds * * * the period of community control ceases to run until the time that the offender is brought before the court for its further action."). He thus qualifies as an "offender" within the meaning of this statute.

{¶15} But, with that premise in mind, the statute does not definitely resolve how the first and final sentences are to interrelate—in other words, is the right in the first sentence

8

conditioned on the notice in the final? No Ohio court has yet shed light on this question.[1] And we decline to answer it today because the play in the joints of the statute gives enough latitude to the officers to render their search within the ambit of the good faith exception. As in *Stadelman* and *Reedy*, the statute at issue in this case "is not free from ambiguity." *Reedy* at ¶ 19.

{¶16} We thus find the officers' belief that the statute enabled them to execute a warrantless search sufficiently reasonable to trigger the protection of the good faith exception on the facts at hand, even were we to ultimately conclude that their reading of the statute was flawed. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.' ").

{¶17} Therefore, because the probation officers relied in good faith upon R.C. 2951.02(A) in conducting their warrantless search of Mr. Gies's residence, the exclusionary rule does not apply to the remaining evidence beyond the scope of the plain view exception. Accordingly, we cannot say the trial court erred in denying Mr. Gies's motion to suppress under these particular circumstances, and we accordingly overrule Mr. Gies's first assignment of error.

III.

{¶18} We next address Mr. Gies's challenge to the weight and sufficiency of the evidence supporting his convictions. In reviewing the sufficiency of the evidence to support

---

[1] Ohio courts have interpreted the first sentence, but they have not wrestled with the impact of the final on the first. *See State v. Nelson*, 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 10 ("R.C. 2951.02(A) authorizes a probation officer to search the probationer and his residence if the probation officer has 'reasonable grounds to believe that the offender is not abiding by the law[.]' "); *State v. Helmbright*, 2013-Ohio-1143, 990 N.E.2d 154, ¶ 20 (10th Dist.) ("Thus, a warrantless search, pursuant to R.C. 2951.02(A), complies with the Fourth Amendment if the officer who conducts the search possesses 'reasonable grounds' to believe that the probationer has failed to comply with the terms of their probation.").

9

a criminal conviction, "the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt." *State v. Pettus*, 1st Dist. Hamilton No. C-170712, 2019-Ohio-2023, ¶ 52, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. On the other hand, when reviewing the weight of the evidence, we must "examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice." *Pettus* at ¶ 52, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶19} As to the sufficiency argument, Mr. Gies challenges both his conviction for having weapons while under a disability pursuant to R.C. 2923.13(A)(2) and his aggravated trafficking conviction pursuant to R.C. 2925.03(A)(2). Turning to the former, R.C. 2923.13(A)(2) requires that the offender have a firearm, as defined by R.C. 2923.11(B), and that the firearm be "operable," meaning "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." *See* R.C. 2923.11(B)(1). In determining this capability, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." *See* R.C. 2923.11(B)(2). Importantly, "[e]vidence of postseizure test firing may prove operability of a firearm." *State v. Jackson*, 169 Ohio App.3d 440, 2006-Ohio-6059, 863 N.E.2d 223, ¶ 28 (6th Dist.).

{¶20} At trial, contrary to Mr. Gies's assertions, the state offered testimony concerning the firearms found at the residence and their capability of expelling a projectile. Officer Butler not only thoroughly explained his procedure for test-firing the guns, but also

explicitly testified that, based off his test firing, the guns were indeed operable. As a result, sufficient evidence existed to enable the jury to find beyond a reasonable doubt that the discovered guns qualified as "operable" firearms within the meaning of the statute.

{¶21} Mr. Gies's sufficiency argument as to his aggravated trafficking in drugs conviction also lacks merit. In relevant part, R.C. 2925.03(A)(2) prohibits a person from knowingly "prepar[ing] for distribution, or distribut[ing] a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." Relying on *State v. Edwards*, 8th Dist. Cuyahoga No. 91841, 2009-Ohio-4365, Mr. Gies suggests the state did not provide sufficient evidence that he packaged the baggie of 24 amphetamine tablets (found in the bedroom nightstand). In *Edwards*, the court found insufficient evidence of trafficking because the state, to show the defendant intended to sell the drugs, only provided evidence of a scale and baggies found in the house, failing to provide sufficient evidence that the defendant, and not the other cohabitant of the house, was the trafficker. *Id.* at ¶ 22.

{¶22} Contrastingly, the state here provided much more than a scale and some empty baggies. At trial, the officers testified about the items found in the bedroom: the bag of amphetamine tablets discovered with other large bags of narcotics all similarly packaged, the digital scale, the notebook listing the price for a pound of methamphetamine that correlated with the amount of cash (over $4,500) found on Mr. Gies during arrest, and stacks of additional empty baggies—all located near two loaded guns. Notably, the officers discovered all these items in the bedroom Mr. Gies indicated was "our bedroom" in response to the officer's question about Ms. Vilas's location. The same bedroom that had a sign on the wall that read "Chris" and a mirror with "Allison loves Chris" written on it. And

11

thus, based on the above evidence, the jury could find beyond a reasonable doubt that Mr. Gies prepared the amphetamine tablets with intent to sell them.

{¶23}  As to his weight of the evidence challenge, Mr. Gies asserts more of the same, suggesting that he was merely a visitor at the residence and that the state failed to show the drugs were his.  Yet, based upon the evidence already discussed above—his reference to "our bedroom," his first name written on the wall, the drugs and firearms found within his bedroom correlating to the cash found on his person—and in light of the entire record and credibility of the witnesses, we cannot say that the fact finder clearly lost its way and created a manifest miscarriage of justice.  Therefore, we must overrule Mr. Gies's second assignment of error.

IV.

{¶24}  For the foregoing reasons, we find that Mr. Gies's two assignments of error lack merit and are accordingly overruled.  The judgment of the trial court is affirmed.

Judgment affirmed.

MYERS, P. J., and WINKLER, J., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion