[Cite as *State v. Maschke*, 2014-Ohio-288.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 11 CA 12 |
| GEORGE R. MASCHKE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No.  2010 CR 0142


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      January 27, 2014


APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

NO APPEARANCE      VALERIE KUNZE
ASSISTANT STATE PUBLIC DEFENDER
250 East Broad Street, Suite 1400
Columbus, Ohio  43215

*Wise, P. J.*

{¶1}  Appellant George R. Maschke appeals from the denial of his motion to suppress certain evidence, following his conviction for aggravated vehicular homicide and O.V.I. in the Court of Common Pleas, Morrow County. The relevant facts leading to this appeal are as follows.

{¶2}  On the evening of August 6, 2010, Michelle Golden, a pedestrian, was struck and killed by an automobile, driven by appellant, near the intersection of Denman Road and County Road 37 in Morrow County, near the Mid–Ohio race track. While bystanders were assisting in the efforts to save Golden before she passed away, appellant returned to the scene of the collision. Witnesses observed him park his car, and noticed the right side of his windshield was broken and his right front fender was damaged. They later described appellant's demeanor after the collision as frightened and shocked. Appellant told persons at the scene that he thought he had struck a deer or that someone had thrown something at his windshield.

{¶3}  A number of law enforcement officers came to the crash scene. Sergeant Justin Hurlbert of the Ohio State Highway Patrol noted appellant's flushed face, glassy and bloodshot eyes, and detected the strong odor of an alcoholic beverage coming from appellant's vehicle and also from appellant's person. Appellant was also unsteady on his feet.

{¶4}  Appellant was put through a series of field sobriety tests at the scene. The responding troopers concluded appellant had operated his motor vehicle under the influence of alcohol and placed him under arrest.

{¶5}    Appellant told officers he was on probation. Contact was made with probation officials in nearby Richland County, as further analyzed infra. Appellant was taken to Galion Community Hospital by Trooper Shawn Robles of the Ohio State Highway Patrol, where a blood sample was drawn by a nurse on duty. His sample was submitted to the Ohio State Highway Patrol crime lab for testing, which ultimately indicated appellant's blood alcohol concentration was .177 grams per one hundred milliliters of blood.

{¶6}    Appellant was thereafter charged by indictment with one count of aggravated vehicular homicide pursuant to R.C. 2903.06(A)(1)(a), a felony of the second degree, one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of O.V.I. pursuant to R.C. 4511.19(A)(1)(f), a misdemeanor of the first degree. Appellant entered pleas of not guilty, and the case was eventually set for a jury trial.

{¶7}    During the pre-trial phase of the case, appellant sought to suppress his statements to investigators and the blood test results. A suppression hearing was conducted on May 23 and 24, 2011. The parties were also given an opportunity to brief issues which arose during the suppression hearing.

{¶8}    On July 12, 2011, the trial court sustained in part and overruled in part appellant's motion to suppress. The trial court found appellant had a right to consult with counsel before making any statements, and any incriminating statements made by appellant subsequent to his request to consult with counsel would be deemed inadmissible at trial, unless appellant were to testify. However, the trial court ruled that appellant, as a probationer of Richland County, was under an obligation to submit to a

drug and alcohol test. The court also found appellant had consented to the test. Thus, the trial court found no search warrant was necessary to obtain a blood sample from appellant. Finally, the trial court found the State had established substantial compliance with Department of Health regulations pertaining to collection of the blood sample and subsequent testing.

{¶9}   The case thereafter proceeded to trial by jury and appellant was found guilty as charged. He was sentenced on Count One, aggravated vehicular homicide, and Count Two, O.V.I., with Count Three merged. He received a prison term of 6 years, in addition to a jail term of six months and a 50–year license suspension.

{¶10} Appellant then filed an appeal to this Court, challenging the trial court's decision to overrule his motion to suppress the blood draw evidence and further arguing that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. In our opinion issued September 24, 2012, we reviewed the trial court's extensive findings regarding the constitutionality of the blood draw, and noted that appellant had not provided a transcript of the suppression hearing commencing on May 23, 2011. We therefore presumed the regularity of the trial court's proceeding on the motion, and overruled the assigned error. *See State v. Maschke*, Morrow App.No. 11–CA–12, 2012-Ohio-4473, ¶ 33, ¶ 34. We then considered and overruled appellant's assigned error as to sufficiency and manifest weight of the evidence; thus, the trial court's decision was affirmed. *Id.* at ¶ 43.

{¶11} On December 24, 2012, appellant filed a motion for reopening pursuant to App.R. 26(B), regarding the first assigned error. On March 4, 2013, we granted said

motion. The suppression hearing transcript, in two volumes, was filed on or about April 15, 2013.

**{¶12}** Appellant presently raises the following sole Assignment of Error:

**{¶13}** "I.  THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION TO SUPPRESS BLOOD EVIDENCE OBTAINED IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS SUBSEQUENTLY ALLOWING IT TO BE INTRODUCE (SIC) INTO EVIDENCE DURING HIS TRIAL."

I.

**{¶14}** In his sole Assignment of Error, appellant contends the trial court erred in overruling his motion to suppress the blood draw evidence. We disagree.

**{¶15}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. As a general rule, "determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶16} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. Specifically, the Fourth Amendment protects persons against unjustified or improper intrusions into a person's privacy, including bodily intrusion. *See State v. Gross* (May 24, 1999), Muskingum App. No. CT 96-055, citing *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. It is well-established in American law that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Nonetheless, the United States Supreme Court has recognized that the Fourth Amendment's "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston v. Lee* (1985), 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662, quoting *Schmerber, supra*, at 768.

{¶17} As an initial matter, we note appellant initially maintains that this is a case of nonconsensual blood testing (Appellant's Brief at 6), although, as we noted in our prior opinion, the trial court determined appellant had consented to the blood draw. *See Maschke I* at ¶ 33. Appellant has asked us to incorporate his brief from *Maschke I*; we note that in the first brief, appellant conceded that he had consented, but only because he was "threatened with further legal sanctions if he did not, i.e., a probation violation."

Appellant's Brief, Case 11CA0012, February 21, 2012, at 9. Our review herein of the now-available suppression transcript, particularly the testimony of Trooper Robles and Sergeant Hurlbert, does not shed much additional light on the "consent" issue. Furthermore, the issue of whether appellant was under arrest at the hospital, for purposes of "implied consent" under R.C. 4511.191(A)(2), does not appear to be before us.[1] We will therefore focus our attention on analyzing the import of appellant's probation status and whether exigent circumstances justified the warrantless blood draw in this instance.

{¶18} The State has the authority to draw blood, using reasonable procedures, from a person suspected of O.V.I. without consent and over objection, provided that probable cause and a warrant or exigent circumstances are shown. *See State v. Hollis,* Richland App.No. 12CA34, 2013-Ohio-2586, ¶ 30, citing *State v. Hoover,* 123 Ohio St.3d 418, 2009–Ohio–4993, 916 N.E.2d 1056. In regard to a person on probation status, we have recognized: "Ohio law permits a probation officer to conduct a warrantless search of a probationer's person or home if an officer has 'reasonable grounds' to believe the probationer failed to abide by the law or by the terms of probation." *State v. Smith,* Stark App.No. 2011CA00140, 2011-Ohio-6872, ¶ 11, citing *State v. Hendricks,* Cuyahoga App. No. 92213, 2009–Ohio–5556.

{¶19} At the suppression hearing, Sergeant Hurlbert of the Ohio State Highway Patrol testified that while at the scene of appellant's accident, he contacted the Richland County on-call assistant prosecutor regarding appellant's status, following which he contacted Trooper Robles. Suppression Tr. I at 59. His testimony continued:

---

[1] We note Trooper Robles testified that he placed appellant under arrest on August 6, 2010, after completion of field sobriety testing. Suppression Tr. I at 16.

{¶20} "Q. Now, excuse me, Sergeant, did you advise Trooper Robles to take any action based on the conversations with Miss Page that were relayed to you?

{¶21} "A. Yes, along with other reasons.

{¶22} "Q. Okay. What did you advise Trooper Robles? Let's start with that.

{¶23} "A. I advised Trooper Robles before he left the scene that, again, we were going to try and get a voluntary sample from the defendant. However, we were going to get a sample. At sometime in there I called Trooper Robles on his cell phone, I believe and informed him of the information that I had received from the Richland County Prosecutor's Office ordering a blood draw from the defendant.

{¶24} "Q. On what basis was that blood draw being ordered from Richland County?

{¶25} "A. It was being ordered from as a probation violation my understanding of it (sic). They made contact with the probation officer Joann Crabsman and then she contacted the  - -  Joann Crabsman, the probation officer, contacted the Richland County Assistant Prosecutor Bambi Couch-Page requesting direction and one of the terms of the suspect's probation was to comply with a chemical test and they ordered it.

{¶26} "Q. Okay.

{¶27} "A. So there was two reasons why I was telling Trooper Robles to obtain a blood draw."

{¶28} Suppression Tr. I at 59-60.

{¶29} In addition, as recently stated by the Eleventh District Court of Appeals: "Regarding whether exigent circumstances are present in blood draw cases, *** '[i]t is beyond cavil that alcohol in an individual's system progressively dissipates over a short

period of time. * * * This is why alcohol in body substances is [considered] evanescent evidence.' " *State v. Carr*, 11th Dist. Lake No. 2012–L–001, 2013-Ohio-737, ¶ 44, citing *Willoughby v. Dunham,* 11th Dist. Lake No. 2010–L–068, 2011–Ohio–2586, ¶ 37 (internal citations and quotations omitted). Nonetheless, the United States Supreme Court has held that natural metabolization of alcohol in the blood does not create a "per se" exigency. *See Missouri v. McNeely* (2013), ___ U.S. ___, 133 S.Ct. 1552.

**{¶30}** In the case sub judice, the accident had occurred at about 8:30 PM on a Friday evening. The blood draw took place at 10:47 PM. See Suppression Tr. I at 45. Sergeant Hurlbert further testified in this regard as follows:

**{¶31}** "A. Being that I was looking at a homicide investigation with alcohol, just the shear (sic) nature of alcohol is fleeing in nature. I was looking at that was evidence, his body possessed evidence of a crime that I was investigating or at least Trooper Robles, our department, was investigating. With alcohol, it is going to dissipate over time. That's just how alcohol is. As soon as it is taken into the body then the metabolism process begins and that is  - -  that is evidence that is fleeing in nature. I attempted to contact the oncall Morrow County Prosecutor, Tom Elkin. There was no answer at his phone. I was going to attempt to get a search warrant to get his blood and I was unable to make contact with him. And it was my  - -  my decision that we needed that sample."

**{¶32}** Suppression Tr. I at 57-58.

**{¶33}** Upon review, in light of appellant's confirmed probationer status and the totality of the exigent circumstances at the time, we find the State's action in obtaining appellant's blood sample at the hospital after appellant's arrest was reasonable under

the Fourth Amendment. The trial court therefore correctly decided the ultimate issue raised in appellant's motion to suppress.

**{¶34}** Accordingly, we hold the trial court did not err in denying the motion to suppress under the facts and circumstances of this case.

**{¶35}** Appellant's sole Assignment of Error is overruled.

**{¶36}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Morrow County, Ohio, is hereby affirmed.


By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.