[Cite as *State v. Campbell*, 2020-Ohio-4119.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| DANIEL J. CAMPBELL, | : | | Case No. 2019 CA 00055 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield County
                             Court of Common Pleas, Case No.
                             2019 CR 0270

JUDGMENT:                    Reversed and Remanded

DATE OF JUDGMENT:            August 18, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

R. KYLE WITT                              SCOTT P. WOOD
Fairfield County Prosecutor               Conrad/Wood
                                          120 East Main Street, Suite 200
By: CHRISTOPHER REAMER                    Lancaster, Ohio 43130
Assistant County Prosecutor
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Baldwin, J.*

{¶1}  Appellant, Daniel J. Campbell appeals the decision of the Fairfield County Court of Common Pleas denying his motion to suppress evidence discovered by his probation officer during a random search. Appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}  Daniel Campbell was granted judicial release in *State v. Campbell,* Fairfield County Common Pleas Case No. 2012 CR 00193 and placed on community control. His probation officer, Kelsey Conn, decided that Campbell was doing well enough that his level of supervision should be reduced and that his case should be transferred to a new probation officer.  Conn thought that a "home check" would be appropriate prior to the transfer, so she and several other members of the probation office visited Campbell's residence and conducted a search.  The probation officers discovered what appeared to be child pornography on Campbell's cell phone and that discovery resulted in Campbell's conviction and incarceration.

{¶3}  Campbell was indicted for two counts of robbery in May 2012 and he entered a guilty plea to one count in December 2012.   Campbell pursued and exhausted his appellate rights and in December 2015 he began serving his three year sentence. The trial court granted his request for judicial release in December 2017 and placed him on community control.   Campbell signed a document captioned Acknowledgement, Agreement, & Additional Terms & Conditions of Community Control and that document contains a term regarding questioning and searches that states as follows:

{¶4}  C. I consent to being questioned by any Community Control Officer. I consent to searches of my person, my property, my vehicle, and my residence at any time

without a warrant. I understand this includes common areas and areas that are exclusive to me.

{¶5}    Campbell was compliant with the terms of his community control order. His probation officer decided he was entitled to a reduced level of supervision but planned to search his home, a process she described as a "home check," prior to changing his status. The probation officer relied upon the community control conditions for authority to complete a search of Campbell's residence and cell phone without probable cause, reasonable grounds, or any other justification for the search.

{¶6}    Probation Officer Conn conducted the "home check" on August 1, 2018 accompanied by other members of the probation office. Her colleagues secured the back door of the residence while she and other officers approached the front door and knocked. She was admitted by Campbell and she explained her purpose. He did not object and she entered the home with the other officers and instructed Campbell to have a seat at the kitchen table while they conducted the search.

{¶7}    During the search of Campbell's bedroom a cell phone was discovered. The cell phone was brought to Probation Officer Conn and she reviewed text messages on the phone to ensure that it was Mr. Campbell's phone. She continued her search of data accessible on the phone until she found what appeared to be pornographic images of minors.  Conn conferred with Senior Probation Officer Casey Jones regarding how to proceed and Jones asked Campbell to confirm he owned this phone. Campbell affirmed it was his cell phone.  The search was postponed until search warrants could be obtained for that phone and other electronic devices. The affidavit requesting the search warrant relied upon the images discovered by Ms. Conn when she looked through the cell phone.

{¶8}   As a result of the discovery of pornographic images found on several electronic devices owned by Mr. Campbell, he was charged with nine felony offenses. Campbell filed a motion to suppress the evidence discovered by probation officer Conn contending that the search was not based on reasonable grounds to believe he had violated the terms of his community control and was unlawful. Appellee filed a memorandum contra contending that Campbell "knowingly, voluntarily and intelligently waived any of the limited Fourth Amendment protected possessed in exchange for his release from prison."

{¶9}   The trial court conducted an oral hearing on the matter and heard testimony from the probation officer, Kelsey Conn. Conn explained that she had been a probation officer for five years and completed the probation officer training required by the Supreme Court of Ohio. She described the process of reviewing the terms of the conditions of community control with each of her probationers, which includes a consent "to search any time without a warrant." When asked about the home visits, she confirmed that they are unannounced and the purpose was to confirm that the probationers were residing at their stated address and that there were no additional violations of terms of probation such as firearms or drugs. Ms. Conn also confirmed that the Fairfield County Probation Department conducts random searches even if the probationer has not aroused any suspicion that they might be in violation of the terms and conditions of their probation. She agreed that they commonly search probationers who have complied with all of the terms of their community control order.

{¶10}  She confirmed that it was her common practice to do a home check when she is considering reducing the probationer's level of supervision to ensure complete

compliance before the transfer, and she had planned to complete such a home check on Campbell prior to reassigning his case and lowering his level of supervision. Up to the date of this home check, Campbell had been compliant with all the terms and conditions of his probation, had not tested positive for drugs, and had attended all of his mental health counseling as ordered. Conn confirmed that Campbell had not violated the terms and conditions of probation prior to August 1, 2018, and she had no suspicion nor had she received information that he had committed any violation prior to the inspection. Conn expressed her belief that this fieldwork, or home check, was lawful or constitutional at the time it was conducted and she claimed that she reviews the policies and procedures of her department on an annual basis to ensure that she is complying with the law.

{¶11} The trial court denied the motion to suppress finding that Campbell executed a valid consent to search his property and that the law enforcement officer was acting in good faith reliance upon a judicial order that the officer believed authorized her to act.

{¶12} Campbell changed his plea to no contest to counts one through nine and he was sentenced to an aggregate term of eighty-four months and ordered to register as a Tier I and a Tier II sexual offender. Campbell filed a notice of appeal and submitted one assignment of error:

{¶13} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

## STANDARD OF REVIEW

{¶14} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside, supra; Dunlap, supra*. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, *supra,* quoting *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra*.

{¶15} Campbell contends that the trial court erred by failing to apply the correct law to the facts and thereafter incorrectly decided that his Fourth Amendment rights were not violated, so we review the trial court's decision de novo.

{¶16} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." A warrantless search or seizure is per se unreasonable under these constitutional provisions, subject to a few specific and well-delineated exceptions. *California v. Acevedo* (1991), 500 U.S. 565; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207. The prosecution has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable. *Id.* Generally evidence obtained from searches and seizures conducted

in violation of the Fourth Amendment is inadmissible in court. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).　The purpose of this exclusionary rule is to remove any incentive to violate the Fourth Amendment and, thereby, deter police from unlawful conduct. *United States v. Leon* (1984), 468 U.S. 897; *State v. Jones*, 88 Ohio St.3d 430, 435, 2000-Ohio-0374, 727 N.E.2d 886. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States,* 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

**ANALYSIS**

**{¶17}**　The Fourth Amendment right of appellant, Daniel J. Campbell, to be free of unreasonable searches and how his status as a probationer and the application of R. C. 2951.02 affect that right, is the focal point in this matter.　The United States Supreme Court and the Supreme Court of Ohio have spoken on probationer and parolee Fourth Amendment rights in different contexts, but those courts have not addressed the issue of whether a probation officer can, without violating R.C. 29521.02, conduct a random, unannounced search of a probationers property with neither cause nor any suspicion that the probationer has committed another offense, violated any term of his probation or acted in such a way that the probation officer would reasonably suspect that the probationer had acted inappropriately. We have reviewed those holdings as part of our analysis of the law and find that while these decisions provide background for the

development of the law, they are not controlling in this case because those courts did not address the impact of R.C. 2951.02.

### JUDICIAL LIMITATION OF PROBATIONER / PAROLEE FOURTH AMENDMENT RIGHTS

{¶18} The United States Supreme Court addressed whether a probationer's Fourth Amendment rights were impacted by his status as a person subject to the close supervision of the state in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). Wisconsin law put Griffin in the legal custody of the State Department of Health and Social Services and rendered him "subject ... to ... conditions set by the court and rules and regulations established by the department." Wis.Stat. § 973.10(1) (1985–1986). One of the Department's regulations permitted any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are "reasonable grounds" to believe the presence of contraband—including any item that the probationer cannot possess under the probation conditions. Wis.Admin.Code HSS §§ 328.21(4), 328.16(1). Another regulation made it a violation of the terms of probation to refuse to consent to a home search. HSS § 328.04(3)(k).

{¶19} The Supreme Court reviewed the regulations in the context of the purposes of the justice system and concluded that "The warrantless search of petitioner's residence was "reasonable" within the response to the "special needs" of a probation system. *Id.,* syllabus, paragraph 1. The court limited its decision to the reasonableness of the regulations, stating that "The conclusion that the regulation in question was constitutional makes it unnecessary to consider whether any search of a probationer's home is lawful

when there are "reasonable grounds" to believe contraband is present." *Id.,* syllabus, paragraph 1.

**{¶20}** The limits of the Fourth Amendment rights of a parolee in the absence of an applicable statute or regulation arose in *State v. Benton,* 82 Ohio St.3d 316, 1998-Ohio-386, 695 N.E.2d 757 (1998). The companion to R.C. 2951.02(A), R.C. 2967.131 was effective at that time of Benton's trial and arguably relevant, but the court decided that the terms of that section were not applicable to the facts of the case and decided the question solely on the constitutional issue.

**{¶21}** In *Benton,* the Supreme Court of Ohio found that "A warrantless search performed pursuant to a condition of parole requiring a parolee to submit to random searches of his or her person, motor vehicle, or place of residence by a parole officer at any time is constitutional." *Benton, supra,* syllabus. Benton agreed to a term of probation that permitted "a search without warrant of my person, my motor vehicle, or my place of residence by a parole officer at any time." *Id.* at 316. The Court noted that "[i]t is clear that a requirement that searches only be conducted when officers have 'reasonable suspicion' or probable cause that a crime has been committed or that a condition of probation has been violated could completely undermine the purpose of the search condition." *Id.* at 320.

**{¶22}** The court acknowledged that R.C. 2967.131(B) had been adopted prior to Benton's trial but declined to apply it to the facts of the case:

> In Ohio, there was no statutory authority for a search of a parolee's residence until November 9, 1995, four months after the defendant agreed to the conditions of his supervision. After the defendant signed the

Conditions of Supervision form, but while he was on parole and before the search in question was conducted, the General Assembly enacted R.C. 2967.131(B). 146 Ohio Laws, Part I, 125. This statute requires field officers conducting a search to have reasonable grounds to believe that the releasee is not abiding by the law or otherwise is not complying with the terms and conditions of his or her conditional release. However, this statute did not exist when the defendant signed the Conditions of Supervision form. Accordingly, this statute cannot create a right that the defendant had already waived.

*Supra* footnote 3.

**{¶23}** Justice Pfeifer's dissent provides further insight to the *Benton* court's thinking when he states: "I am thankful that the enactment of R.C. 2967.131(B)[1] limits the scope of this decision. Under the statute, a parole officer may conduct a warrantless search of a parolee or his property if the officer has reasonable grounds to believe that the parolee is not abiding by the law or complying with the terms of his parole." *Supra,* p. 323.

**{¶24}** The United States Supreme Court considered warrantless searches of probationers supported by reasonable suspicion in *United States v. Knights,* 534 U.S. 112, 113, 122 S.Ct. 587, 588, 151 L.Ed.2d 497 (2001), where a California trial court imposed a probationary term that permitted "search at anytime, with or without a search or arrest warrant or reasonable cause, by any probation or law enforcement officer." *Id.*

---

[1] R.C. 2967.131 applies to persons subject to the control to the state parole board and contains terms identical to those found in R.C. 2951.02(A) regarding the need for reasonable grounds to conduct a search.

*at syllabus.* The court found that the warrantless search, supported by reasonable suspicion and authorized by a probation condition, satisfied the Fourth Amendment, focusing on Knights' probationary status. A lesser degree of cause satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. *Id.*

**{¶25}** Perhaps in response to *Knights,* the state of California adopted a statute "which requires every prisoner eligible for release on state parole to "agree in writing to be subject to search or seizure by a parole officer or other peace officer ..., with or without a search warrant and with or without cause." *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 2194, 165 L.Ed.2d 250 (2006), syllabus. The Supreme Court considered the statute and concluded that "[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at syllabus. The court noted that the California Legislature adopted this requirement because "given the number of inmates the State paroles and its high recidivism rate, a requirement that searches be based on individualized suspicion *** would undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders."*Id* at 854.

**{¶26}** After the *Griffin* decision, but before the opinions in *Benton*, *Knights* and *Samson,* the Ohio Legislature adopted House Bill 4 1995 Ohio Laws File 49 (H.B. 4) amending R.C. 2951.02 and R.C. 2967.131 adding identical language to both sections addressing the Fourth Amendment rights of persons on probation or parole respectively. The amendment imposed a "reasonable grounds" restriction on searches and imposed a notification obligation on the courts:

During the period of an offender's probation or other suspension, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, the place of residence of the offender, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest or for which the offender has the express or implied permission of a person with a right, title, or interest to use, occupy, or possess if the probation officers **have reasonable grounds** to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the offender's probation or other suspension. The court that places the offender on probation or that suspends the offender's sentence of imprisonment pursuant to division (D)(2) or (4) of section 2929.51 of the Revised Code shall provide the offender with a **written notice** that informs the offender that authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may conduct those types of searches during the period of probation or other suspension if they have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the offender's probation or other suspension. (Emphasis added.)

1995 Ohio Laws File 49 (H.B. 4), 2951.02(C), See Also 2967.131(B).

**{¶27}** The Ohio Legislature's adoption of House Bill 4 appears to be a response to the holding in *Griffin* and an effort to bring clarity to the procedure for conducting warrantless searches of persons subject to the rules of probation or parole. The Legislature adopted "a regulation that is itself a reasonable response to the "special needs" of a probation system" that permitted the probation department to conduct a search when "information provided indicates *** only the likelihood ("had or might have guns") of facts justifying the search." *Griffin, supra at* syllabus, 880.

**{¶28}** After the issuance of the decisions in *Helton* and *Samson* it is evident that the terms of House Bill 4 provide more protection to a probationer/parolee than what is required by the Fourth Amendment and we acknowledge this is the Legislature's prerogative. *State v. Boykin*, 9th Dist. Summit No. 25752, 2012-Ohio-1381, ¶ 7aff'd, 138 Ohio St.3d 97, 2013-Ohio-4582, 4 N.E.3d 980, ¶ 7 (2013), quoting *In re Application to Seal Record of No Bill, 131* Ohio App.3d 399, 403, 722 N.E.2d 602 (3d Dist.1999). Some Ohio statutes provide greater rights than either the Ohio or United States Constitution. *Siegwald v. Curry*, 40 Ohio App.2d 313, 323–24, 319 N.E.2d 381 (10th Dist.1974) ("Similarly here, the legislature can enact statutes which grant greater rights to accused persons than the minimum threshold found in the Constitutions." *State v. Boone*, 8th Dist. Cuyahoga No. 81155, 2003-Ohio-996, ¶¶ 23-24; "A state may provide its citizens with greater protection of their individual rights than does the federal constitution." *Wilcher v. City of Wilmington*, 139 F.3d 366, 380 (3d Cir.1998).

### APPLICATION OF THE REASONABLE GROUNDS REQUIREMENT

**{¶29}** We have had the opportunity to apply the relevant language of House Bill 4 in our decisions. In *State v. Bays*, 5th Dist. Ashland No. 10-CA-42, 2011-Ohio-3021, we

addressed a warrantless search of a probationer's residence in the context of the rulings in *Benton*, *Griffin* and the adoption of R.C. 2967.131. Evelyn Bays signed a parole agreement that contained the following terms:

> I agree to a search without warrant of my person, my motor vehicle, or my place of residence by a supervising officer or other authorized representative of the Department of Rehabilitation and Correction at any time. * * *
>
> Notice pursuant to section 2959.131[2] of the Revised Code, officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any other property of which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision.

*State v. Bays*, 5th Dist. Ashland No. 10-CA-42, 2011-Ohio-3021, ¶¶ 3-4

**{¶30}** With regard to reasonable grounds, we found that "Officer Flaherty had evidence that Evelyn's husband was cultivating marijuana in their basement, as was reported to her by an employee of the tobacco shop that Appellant and Evelyn ran. Such evidence is sufficient to supply the necessary basis for the APA to search a parolee's home." *State v. Bays,* 5th Dist. Ashland No. 10-CA-42, 2011-Ohio-3021, ¶ 33.

**{¶31}** We addressed another case involving a search of a probationer's residence in *State v. Karns,* 196 Ohio App.3d 731, 2011-Ohio-6109, 965 N.E.2d 352 (5th Dist.)

---

[2] We believe the reference to R.C. 2959.131 in the parole terms is typographical error, as the notice described after the reference is found in R.C. 2967.131 and we have not found any code section captioned R.C. 2959.131, nor any Chapter 2959 in the Ohio Revised Code.

where the probationary term, similar to the term in this case, contained no requirement of a finding of reasonable grounds for the search.   In *Karns*, the terms of community control included a consent to a search of the probationer's property and her residence, "which included common areas within the residence and areas that are exclusive to me, at any time" by community-control officers. *Id* at ¶ 4.   While the term of the community control did not reference a need for reasonable grounds, we noted that "Ohio law permits a probation officer to conduct a warrantless search of a probationer's person or home if an officer has "reasonable grounds" to believe that the probationer failed to abide by the law or by the terms of probation."   *Id.*  at ¶ 33. We reviewed the facts in the record of *Karns* and held that the trial court erred by finding that the search was supported by reasonable suspicion and reversed the decision of the trial court.   Judge Farmer's dissent in *Karns* noted that reasonable grounds were required before a warrantless search was permitted, but she would have found that the facts supported a conclusion that reasonable grounds existed and that the decision to deny the motion to suppress was not error.

{¶32} We confirmed our view that Ohio law requires reasonable grounds to support a warrantless search of a probationer in *State v. Maschke,* 5th Dist. Morrow No. 11 CA 12, 2014-Ohio-288 where we found that "Ohio law permits a probation officer to conduct a warrantless search of a probationer's person or home if an officer has 'reasonable grounds' to believe the probationer failed to abide by the law or by the terms of probation." *State v. Maschke,* 5th Dist. Morrow No. 11 CA 12, 2014-Ohio-288, ¶ 18 quoting *State v. Smith*, Stark App.No.2011CA00140, 2011–Ohio–6872, ¶ 11.

**HOUSE BILL 4 LIMITS TRIAL COURT'S SENTENCING DISCRETION**

*{¶33}* The statutory requirement of reasonable grounds for a search of a probationer that we acknowledged in *Maschke, Karns* and *Bays* limits a trial court's authority to create community control terms. Trial courts have discretion to impose probationary terms that are "interests of doing justice, rehabilitating the offender, and insuring his good behavior" *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469, 470 (1990), but that discretion has its limits. *Id.* A "sentencing court has broad discretion to shape community control sanctions provided that the sanctions are constitutionally and statutorily permitted." Katz, Lipton, Gianneli, & Crocker, Baldwin's Ohio Practice, Criminal Law, Section 119:2 (3d Ed.2014). *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 19. See also *City of Columbus v. Davis,* 10th Dist. Franklin No. 90AP-1423, 1991 WL 94452, *2 (That discretion is limited by statute, as well as by the constitutional requirements of due process.)

> As stated by the Indiana Supreme Court, because " 'sentencing is a creature of the legislature * * * courts are limited to imposing sentences that are authorized by statute, rather than only being limited to sentences that are not prohibited by statute.' " (Emphasis sic.) *Wilson v. State,* 5 N.E.3d 759 (Ind.2014), quoting *Wilson v. State*, 988 N.E.2d 1221, 1224 (Ind.App.2013) (Robb, C.J., dissenting).
>
> ***
>
> A "sentencing court has broad discretion to shape community control sanctions provided that the sanctions are constitutionally and statutorily permitted." *Katz, Lipton, Gianneli, & Crocker, Baldwin's Ohio Practice, Criminal Law*, Section 119:2 (3d Ed.2014).

*Anderson*, *supra* at ¶ 13, 19 (2015)

{¶34} Likewise R.C. 2929.51(D)(1) and (2) grant a trial court broad discretion to suspend an offender's imprisonment in favor of conditional probation. Although R.C. 2929.51(D)(2) states that the offender's probation may be conditioned "upon any terms that the court considers appropriate," it is well-settled that the court's discretion in imposing conditions of probation is limited by statute, as well as by the constitutional requirements of due process. *Jones*, *supra* at 52. *City of Columbus v. Davis*, *supra* at *2.

{¶35} The trial court below subjected Campbell to a community control sentence that included requirement that he be subject to random, warrantless searches. Revised Code 2925.01 (A) reduces the level of justification needed for a search from probable cause to reasonable grounds and expressly eliminates the need for a warrant, but it does not authorize random, warrantless searches. This limit to judicial discretion is further supported by a mandatory requirement in that section of the code that probationers receive a written notice of the need for reasonable grounds for search.

{¶36} The Eighth District Court of Appeals addressed the inclusion of warrantless searches with no cause in a community control order and found:

[t]he condition allowing "random" home inspections to be violative of R.C. 2951.02(A). "[C]ourts are limited to imposing sentences that are authorized by statute * * *." *Anderson* at ¶ 13, citing *Wilson v. State*, 5 N.E.3d 759 (Ind.2014). R.C. 2951.02 requires officers to have "reasonable grounds" that a misdemeanor offender is violating the law or otherwise not complying with the conditions of the community control sanctions. In this case, the trial

court abused its discretion ordering "random" home inspections inconsistent with the "reasonable grounds" requirement set forth in R.C. 2951.02(A).

*City of Cleveland v. Turner,* 8th Dist. No. 107102, 2019-Ohio-3378, 132 N.E.3d 766, ¶ 59appeal not allowed sub nom. *Cleveland v. Turner,* 157 Ohio St.3d 1512, 2019-Ohio-5193, 136 N.E.3d 510, ¶ 59 (2019).

**{¶37}** We reach the same conclusion in the case before us. The trial court's inclusion of provision in the terms of community control, obligating Campbell to consent to searches of his person, property, vehicle, and residence at any time without a warrant exceeds the court's sentencing authority as it omits the statutorily required notice and reasonable grounds to support the search.

## APPELLEE'S ALTERNATIVE ANALYSIS

**{¶38}** Appellee invites us to disregard the statute in favor of what we describe as an alternative, constitutional, analysis. We must reject the invitation as "[n]o court should *** induldge (sic) the constitutional issue if the litigant is entitled to relief upon other grounds." *Burt Realty Corp. v. City of Columbus* 21 Ohio St.2d 265, 269, 257 N.E.2d 355 (1970), quoting *Greenhills Home Owners Corp. v. Village of Greenhills,* 5 Ohio St.2d 207, 215 N.E.2d 403 (1966). Because the text of R.C. 2951.02(A) is plain and unambiguous, we are bound to give effect to the legislature's intent by simply applying the law as written. *State v. Faggs,* 2020-Ohio-523 quoting *State v. Kreischer,* 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, ¶ 12. We find no need to consider the constitutional analysis proffered by appellee because the issue posed by this case is resolved by the language of R.C. 2951.02(A).

{¶39} If, arguendo, we would consider the cases cited by appellee, our decision would remain unchanged because the cases are limited to their facts and are distinguishable.

{¶40} Appellee cites *State v. Kelley*, 5th Dist. Delaware No. 13 CAA 04 0028, 2014-Ohio-464, in support of its argument, but that case ultimately addressed the reasonable grounds for the search finding "[t]hus, pursuant to *Griffin* and Ohio's regulatory scheme, a warrantless search of a probationer's home and other property does not violate the Fourth Amendment, provided the searching officer possesses reasonable grounds to believe that the probationer is in violation of the law or of the conditions and terms of probation." *Id.* at ¶ 28. Appellee cites to State *v. Bays*, *supra*, *State v. Burns*, 4th Dist. Highland No. 11CA14, 2012-0hio-1529, *State v. Storer*, 12th Dist. Fayette No. CA2019-04-005, 2019-0hio-5166 and *United States v. Tessier*, 814 F.3d 432, 2016 WL 659251 (Feb. 18, 2016) in support of its proposition that "[c]onsent given as a condition of placement under a term of supervision requiring a probationer or parolee to be subject to random searches without suspicion have routinely been held as reasonable under the Fourth Amendment" but those cases do not support appellee's conclusion in the context of this case.

{¶41} In *Bays,* the probationer was given notice that: "*** pursuant to section 2959.131 of the Revised Code, officers of the Adult Parole Authority may conduct warrantless searches of your person, your place of residence, your personal property, or any other property of which you have been given permission to use if they have reasonable grounds to believe that you are not abiding by the law or terms and conditions of your supervision." Bays, *supra* at ¶ 4. In that case, we found that evidence that the

parolee's husband was growing marijuana in the basement of their home was "sufficient to supply the necessary basis for the APA to search a parolee's home." *Id* at ¶ 33. More significant in that case was the fact that the parolee consented to the search and the husband, who was ultimately charged, did not object.  Consequently, the discussion of the application of *Benton* in that case is not a binding part of the decision.

**{¶42}** *State v. Burns*, 4th Dist. Highland No. 11CA14, 2012-Ohio-1529 is next offered by appellee in support of random searches, but the Fourth District later confirmed in *State v. Johnson,* 4th Dist. No. 14CA3618, 2014-Ohio-5400, 26 N.E.3d 243 that reasonable grounds for a search of a probationer are required:

> The United States Supreme Court has upheld probation searches conducted pursuant to a condition of probation, provided that a "reasonable suspicion" exists that evidence of criminal activity can be found in a probationer's home. *State v. Burns*, 4th Dist. Highland No. 11CA14, 2012-Ohio-1529, 2012 WL 1142698, ¶ 14 citing *United States v. Knights*, 534 U.S. 112, 120–121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

*Johnson*, supra at ¶ 14.

**{¶43}** That court included a reference to R.C. 2951.02 and later found that the probation officers had "reasonable suspicion" to search part of the residence. *Id* at ¶25.

**{¶44}** *State v. Storer*, 12th Dist. Fayette No. CA2019-04-005, 2019-0hio-5166 is inapposite as it relies on *Benton*, and, as we concluded above, that decision was rendered without considering the application of the "reasonable grounds" requirement adopted by the Legislature.  The *Storer* court suggests that a statutory reasonable suspicion (R.C. 2951.02) and constitutional consent bases per *Benton* co-exist, but we must disagree.

The Legislature has determined that the terms of probation must include a "reasonable grounds for a search" restriction and we have no authority to ignore the impact of the statute on the *Benton* ruling.

**{¶45}** *United States v. Tessier, supra,* addresses "the following "standard" search condition that applies to all probationers in Tennessee: "I agree to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time."" *Tessier, supra* at 433. Because Ohio has adopted R.C. 2967.131 and 2951.02 and the opinion in *Tessier* does not address analogous restrictions in Tennessee, we find *Tessier* inapposite.

**{¶46}** The precedent cited by the parties establishes that a search of a parolee or probationer without cause or a warrant does not violate the Fourth Amendment (*Benton*) and that the same search pursuant to a statute or statewide policy is not prohibited by the Fourth Amendment (*Griffin, Samson* and *Tessier*). *Knights* establishes that a probation term supported by reasonable suspicion is sufficient to render a warrant unnecessary. These cases do not address Ohio's statutory requirement that searches of probationers must be supported by reasonable grounds and the court must give written notice of that requirement. These cases, therefore, do not assist appellee's argument.

### GOOD FAITH

**{¶47}** The state argues that, in the alternative, the evidence should not be excluded because the probation officer's search was conducted based upon an objectively reasonable good faith reliance upon the court's order imposing the terms of community control.  We find two faults with this contention,

**{¶48}** The "good faith exception" typically applies to searches incident to a warrant that is later determined to be invalid. "Under the "good faith exception," the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *State v. Laubacher*, 5th Dist. Stark No. 2018 CA 00169, 2019-Ohio-4271, ¶ 44 quoting *State v. George*, 45 Ohio St.3d 325, 330 (1980). The trial court below found that though this case does not involve a warrant, "little distinction can be drawn from a judicial authorized search warrant and a judicially required term of probation from an officer acting in good faith. In each instance the officer acts in part on the authority of a judge who has authorized and or required that the place or individual to be search comply." Appellee provides no precedent directly on point, but does cite to the case of *State v. Gies*, 1st Dist. No. C-180597, 2019-Ohio-4249, 146 N.E.3d 1277, ¶ 17cert. denied,*U.S. No. 19-84232020 WL 2814851. The probation officers in that case "relied in good faith upon R.C. 2951.02(A) in conducting their warrantless search of Mr. Gies's residence." *Id* at ¶ 17. Campbell's probation officer does not mention R.C. 2951.02 in her testimony and the record contains nothing that would suggest that the probation officer was aware of the code section despite her contention of annually reviewing the requirements for a search.

**{¶49}** And the probation officer's reliance on the court's order lacks an objective basis. She confirmed that she believed that the document signed by Campbell authorized her to search Campbell and that no one had told her that the law had changed, but she provides no explanation or basis for that belief. She acknowledges an annual review of

policies and procedures that would include lawful and constitutional searches, but she does not address the terms of R.C. 2951.02 despite its application to the facts of this case. The record provides scant evidence from which we can determine whether her belief that her actions were permissible under the Fourth amendment were objectively reasonable.  She did not claim that she relied on advice she received from an assistant prosecuting attorney, fellow members of law enforcement or information she had received during training seminars or upon binding appellate precedent from any court.  *State v. Johnson,* 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, (2014) ¶¶ 44-45. Further, unlike the issuance of a warrant, this case does not involve the submission of an affidavit supporting probable cause and the issuance of a warrant based upon that affidavit, later determined to be defective. *State v. Wilmoth,* 22 Ohio St.3d 251, 261, 490 N.E.2d 1236, 1244 (1986). Probation Officer Conn expressed a subjective belief that random warrantless searches of probationers were permitted, but the record lacks an unambiguous objective basis for her conclusion.

**{¶50}** When we consider the facts in this case and our holdings in *Karn*, *Bays,* and *Maschke* as well as language of R. C. 2951.02, we cannot agree that the good faith exception is applicable to the failure to comply with the unambiguous requirements of the Ohio Revised Code.

**CONCLUSION**

**{¶51}** Revised Code 2951.02 contains two relevant requirements, a prerequisite of reasonable grounds for a search and an obligation to provide notice.  Neither requirement was fulfilled in this case. The Fairfield County Common Pleas Court was required to provide Campbell with a written notice informing him that his probation officer,

in the completion of her duty, may conduct searches during the period of community control sanction or the nonresidential sanction if they have reasonable grounds to believe that he was not abiding by the law or otherwise is not complying with the conditions of the offender's community control sanction or nonresidential sanction. The appellee did not provide any evidence that such a notice was provided and the record contains no suggestion that a compliant notice exists.  The document referenced by appellee at the hearing on the motion to suppress and within its brief contains only a provision where Campbell states he consents "to being questioned by any Community Control Officer" as well as a "consent to searches of my person, my property, my vehicle, in my residence at any time without a warrant." This notice not only fails to comply with the statute, but it contradicts the terms of the law, providing for a search without reasonable grounds. Campbell's purported written consent cannot be used to alter the statutory limitations imposed upon the trial court's discretion to impose a sentence or community control.

**{¶52}** The appellee conceded within its brief that there was not reasonable grounds for the search of Campbell's residence or phone and that, in fact, the probation department regularly conducts random searches as part of the policy of the department. While we acknowledge that the precedent cited in the briefs provide that such searches may not violate the Fourth Amendment and are supported by the  weight of the state's interest in law enforcement and rehabilitation, this court is obligated to apply R.C. 2951.02 which contains the unambiguous requirement that searches will occur if the probation officer has reasonable grounds to suspect a criminal offense or probation violation and after the offender is given notice of the possibility of such a search.  This legislation is consistent with, and perhaps a response to, the decision in *Griffin, supra,* which found

that the lesser standard of "reasonable grounds" for a search of a probationer's home was ""reasonable" within the meaning of the Fourth Amendment because it was conducted pursuant to a regulation that is itself a reasonable response to the "special needs" of a probation system." *Griffin, supra* syllabus, paragraph 1.  The Supreme Court of Ohio and the United States Supreme Court have issued decisions that sanction random searches of parolees and probationers without cause, but the Ohio legislature has not abandoned the requirement of reasonable grounds for such a search and our role is to apply the law as written and not as it might be.

**{¶53}** In our 2011 decision of *State v. Karns, supra*, we applied the "reasonable grounds" requirement on the search of a probationer despite the fact that the relevant community control terms authorized random, warrantless searches. We reversed the decision of the Fairfield County Common Pleas Court in that case based upon the lack of "reasonable" grounds and we cannot justify a different conclusion in the matter before us.

**{¶54}** The probation officer was forthright about the common usage of random searches as a policy of the Fairfield County Probation Department.  Her testimony also suggested she scrupulously reviewed the law regarding the legality and constitutionality though neither she nor appellee reconciled her policy with the obligations contained within R.C. 2951.02 nor is there any effort to distinguish our application of the statute.  We are concerned the record reflects "deliberate, reckless, or grossly negligent conduct, or *** recurring or systemic negligence" that the exclusionary rule is designed to deter. *Herring, supra.*

{¶55} Because Campbell was not provided the required notice and because the search of Campbell's residence was not supported by reasonable grounds, we find that the search of Campbell's residence and cell phone violated the requirements of R.C. 2951.02. We hold that the appellant's first assignment of error is well taken and reverse the decision of the Fairfield County Court of Common Pleas and remand the matter to the court for further proceedings consistent with this opinion.

By: Baldwin, J.

Hoffman, P.J. and

Wise, John, J. concur.